## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KDK ENTERPRISES, INC.,

          Plaintiff,

v.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

          Defendant.

CIVIL ACTION NO. 05-11509-RCL

### TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S
### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
### OF KDK ENTERPRISES, INC.

Pursuant to Rule 56, Fed.R.Civ.P., Defendant Travelers Casualty and Surety Company of America ("Travelers") hereby submits its opposition to the Motion for Summary Judgment on Count I of the Complaint filed by Plaintiff KDK Enterprises, Inc. ("KDK"). Travelers opposes summary judgment on the grounds that KDK is not entitled to judgment as a matter of law in that genuine issues of material fact exist with respect to, among other matters, KDK's failure to comply with the claim provisions of the surety bond in question.

In support of this opposition, Travelers hereby incorporates the accompanying Controverting Statement of Material Facts in Opposition to Summary Judgment, the Affidavit of Laurie Larson, and the Affidavit of John Grant.

## I.    INTRODUCTION

KDK maintains that it is entitled to summary judgment on Count I of its complaint against Travelers on the grounds that Travelers allegedly failed to comply

with Paragraph 6.1 of the payment bond in question.  In support of this position, KDK maintains that this Court should grant summary judgment on the basis of a decision issued by the Court of Appeals of Maryland.  KDK's claims fail in two respects: (1) KDK failed to comply with Paragraph 4 of the payment bond, thereby obviating Travelers' obligations set forth in Paragraph 6.1; and (2) for compelling reasons, the Maryland decision is not applicable in Massachusetts, and the Massachusetts Superior Court has therefore elected not to adopt its holding.

## II.    STATEMENT OF FACTS

KDK's claims arise from a construction project known as Academy Homes II, located in Boston, Massachusetts (the "Project").  See Travelers' Controverting and Additional Statement of Material Facts (hereinafter "SOF") at ¶ 15.  The joint venture of ODF/Hoon/Peabody ("OHP") served as the Project's General Contractor.  SOF at ¶ 16. KDK entered into a subcontract with OHP to provide all labor and material necessary to perform the exterior and interior painting at the Project.  SOF at ¶ 17.  Travelers, as surety, issued Payment Bond No. 103316488 (the "Bond") on behalf of OHP, as principal, in connection with the Project.  SOF at ¶ 18.

Paragraph 1 of the Bond provides:

1.  [OHP] and [Travelers], jointly and severally bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

SOF at ¶ 19.

Paragraph 3 of the Bond provides:

3. With respect to Claimants, this obligation shall be null and void if [OHP] promptly makes payment, directly or indirectly, for all sums due.

SOF at ¶ 20.

Paragraph 4 of the Bond provides:

4. [Travelers] shall have no obligations to Claimants under this Bond until:

> 4.1 Claimants who are employed by or have a direct contract with [OHP] have given notice to [Travelers] (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

SOF at ¶ 21.

Paragraph 6 of the Bond provides:

6. When the Claimant has satisfied the conditions of Paragraph 4, [Travelers] shall promptly and at [Travelers'] expense take the following actions:

> 6.1 Send an answer to the Claimant with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

> 6.2 Pay or arrange for payment of any undisputed amounts.

SOF at ¶ 22.

Paragraph 13 of the Bond provides:

13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

SOF at ¶ 23.

Throughout the course of the Project, KDK performed deficient and non-conforming work, significantly delayed the Project, and ultimately failed to complete its scope of work. SOF at ¶ 24. As a result of these deficiencies, OHP incurred losses in the form of, among other things, direct delay expenses, liquidated damages to the Project owner, cleaning costs, and backcharges to subcontractors whose work was impacted by KDK's deficiencies. SOF at ¶ 25. OHP further incurred losses in connection with KDK's failure to complete its punch list work at the Project. SOF at ¶ 26. OHP's losses attributable to KDK exceed KDK's subcontract balance. SOF at ¶ 27. As such, KDK is not entitled to payment under either its subcontract with OHP or the Bond issued by Travelers. SOF at ¶ 28.

On or about January 13, 2005, counsel for KDK directed correspondence to Laurie A. Larson of Travelers in Hartford, Connecticut. SOF at ¶ 29. A review of KDK's letter of January 13, 2005 reveals that KDK enclosed a copy of a prior letter directed to OHP on or about October 28, 2004. SOF at ¶ 30. Neither letter was directed to Travelers at the Quincy, Massachusetts address set forth in Paragraph 12 of the Bond. SOF at ¶ 31. Neither letter set forth the amount of KDK's claim with substantial accuracy as expressly required by Paragraph 4.1 of the Bond. SOF at ¶ 32. Neither letter indicates that KDK provided copies to the Project owner as expressly required by Paragraph 4.1 of the Bond. SOF at ¶ 33.

On or about February 7, 2005, Ms. Larson directed correspondence to counsel for KDK acknowledging receipt of KDK's correspondence, identifying Travelers' ongoing investigation, requesting additional information regarding KDK's claim, and reserving

Travelers' rights relevant to the Bond. SOF at ¶ 34. Specifically, the last paragraph of Ms. Larson's letter provides:

> This correspondence and all prior or subsequent communications and/or investigative efforts are made with the express reservation of all rights and defenses [Travelers] or [OHP] has or may have at law, equity or under the terms and provisions of the bond and contract documents. This reservation includes, without limitation, defenses that may be available under any applicable notice and suit limitation provisions. Subject to this strict and continuing reservation, we look forward to hearing from you.

SOF at ¶ 35.

On or about March 16, 2005, counsel for KDK again wrote to Travelers in Hartford, providing additional information with respect to KDK's claim. SOF at ¶ 36. Again, KDK's correspondence of March 16, 2005 failed to indicate that a copy was provided to the Project owner consistent with the express requirements of Paragraph 4.1 of the Bond. SOF at ¶ 37.

On May 5, 2005, counsel for KDK directed correspondence to Travelers with respect to its claim. SOF at ¶ 38. KDK's correspondence of May 5, 2005 failed to state the amount of KDK's claim with substantial accuracy, and further failed to indicate that a copy was provided to the Project owner in compliance with Paragraph 4.1 of the Bond. SOF at ¶ 39.

Travelers never received any correspondence from KDK that complied with the requirements of Paragraph 4.1 of the Bond. SOF at ¶ 40.

Although KDK failed to trigger Travelers' obligations under Paragraph 6 of the Bond, Travelers nonetheless undertook a good faith investigation of KDK's claim. SOF at ¶ 41. As set forth above, Travelers' investigation ultimately revealed that KDK's

delayed and deficient work at the Project caused OHP significant losses for which OHP was entitled to backcharge KDK's subcontract.  SOF at ¶ 42.  Moreover, Travelers' investigation revealed that a significant portion of KDK's claim constituted alleged extra work that was ultimately determined to be part of KDK's original scope of work.  SOF at ¶ 43.  On this basis, KDK is not entitled to any further payment from OHP in connection with its work at the Project.  SOF at ¶ 44.  Accordingly, KDK is not entitled to collect any amounts from Travelers under the Bond.  SOF at ¶ 45.

## III.    LAW AND ARGUMENT

### A.    KDK Is Not Entitled To Judgment As A Matter Of Law.

Summary judgment is appropriate when the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c); Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 218 (1st Cir. 2004).  In determining whether summary judgment is appropriate, the Court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences to that party.  See Hahn v. Sargent, 523 F.2d 461 (1st Cir. 1975).  To defeat a motion for summary judgment, the party opposing the motion must establish the existence of an issue of fact which is both genuine and material.  Id.

### 1.    KDK is Not Entitled to Judgment Under the Miller Act.

As detailed in KDK's Memorandum in Support of Motion for Summary Judgment (the "Memorandum"), there is significant dispute concerning the nature of the Project, and therefore the appropriate framework through which to interpret the

respective rights and liabilities of claimants and the surety under the Bond. As noted in KDK's Memorandum, Judge Peter M. Lauriat of the Massachusetts Superior Court held in unrelated litigation that the Project is a public work of the federal government "subject to the Miller Act." See Memorandum of Decision and Order in MICV2003-01407, pp. 8-9, attached as Exhibit O to KDK's Memorandum. Candidly, the Massachusetts Superior Court has ruled on this issue on several occasions, with inconsistent results. Travelers understands that, to date, four Justices of the Superior Court have considered the issue.[1] Three of the Justices concluded that the Project is subject to the Miller Act (though one subsequently reversed herself on reconsideration by marginal entry after the case had been resolved through settlement). One Justice, the Honorable Alan Van Gestel, recently ruled in Dowd Plumbing Corp. v. ODF.Hoon.Peabody, et al., SUCV2003-05191-BLS, that the Project was not a public work of the federal government and therefore not governed by the Miller Act. See Memorandum and Order on Motion to Dismiss Count V and Count VII, attached hereto as Exhibit A. In so ruling, Judge Van Gestel acknowledged that engaging in a Miller Act analysis with respect to the Project "produces a mixed bag." Id. Nonetheless, while acknowledging the decision as difficult, he ruled that the Project is not subject to the Miller Act. Id. In summary, of the four times the Superior Court has considered the issue, twice the Court has found that the Project is governed by the Miller Act, and twice the Court has found that it is not. Id.

---

[1] See Waltham Lime & Cement Company v. Peabody Construction Co., et al., MICV2003-01407-G; Victor Dahar, Chapter 7 Trustee for Boston Interiors, Inc. v. Travelers Casualty and Surety Company of

Despite the inconsistency of decisions issued by the Superior Court on this issue, Travelers continues to maintain that the Project is a public work of the federal government and therefore subject to the terms and conditions of the Miller Act. Travelers' position is based on the reasoning set forth in Judge Lauriat's written decision.  See Exhibit O to KDK's Memorandum.  KDK has dedicated a significant portion of its argument to persuading this Court that Judge Lauriat was in error, that the Project is not subject to the terms of the Miller Act, and that the Project is a private project.[2]  KDK's efforts in this regard stem from the fact that the Bond is intended to be a statutory bond, and thereby governed by the provisions of the Miller Act.  Paragraph 13 of the Bond provides:

> 13.  When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein.  The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

Consistent with Paragraph 13, to the extent the Project is a public work of the federal government, the provisions of the Miller Act control Travelers' obligations under the Bond.  Notably, the Bond provision pursuant to which KDK seeks summary judgment, the 45 day answer provision set forth in Paragraph 6.1 of the Bond, is not provided for in the Miller Act.  See 40 U.S.C. § 3131, *et seq*.  As the obligation established by Paragraph 6.1 of the Bond is more burdensome than, and therefore inconsistent with,

---

America, SUCV2004-05071; Circle Trucking, Inc. v. O.D.F. Contracting Co., Inc., et al., SUCV2003-05217-A; and Dowd Pluming Corp. v. ODF.Hoon.Peabody, et al., SUCV2003-05191-BLS.

that set forth in the Miller Act, such obligation is deleted from the Bond by Paragraph

13.  In the absence of Paragraph 6.1, there is no basis for KDK's request for summary

judgment, and its motion should therefore be denied.

## 2.    KDK is not Entitled to Judgment Under the Express Terms of the Bond.

To the extent the Court finds that the Project is not governed by the Miller Act, or

that Paragraph 6.1 of the Bond is not deleted by the provisions of Paragraph 13, KDK is

still not entitled to judgment as a matter of law, as KDK failed to comply with the

express provisions of Paragraph 4 of the Bond.

A surety's bond is a contract that sets the limit of the surety's liability.  See

Peerless Ins. Co. v. South Boston Storage & Warehouse, Inc., 397 Mass. 325, 327 (1986).

The rights and obligations of parties under a surety bond are to be determined by the

terms of the bond, construed according to the usual rules of contract interpretation.

Miller v. Perry, 333 Mass. 155, 158 (1955); In re Sinking of M/V Ukola, 806 F.2d 1, 4 (1st

Cir. 1986); see also Elm Haven Constr. Ltd. Partnership v. Neri Constr., LLC, 376 F.3d

96, 100 (2nd Cir. 2004) (a bond is a contract to be construed in accordance with standard

principles of contract interpretation).  It is a well settled principle of suretyship that the

liability of a surety or guarantor is to be ascertained from the terms of the written

instrument by which the surety's obligation is expressed.  See Gordon & Dilworth v.

Abbott, 258 Mass. 35, 38 (1926).  Where the words are unambiguous, the words alone

can be examined to determine their meaning.  Id.  "[W]hen the wording of a contract is

---

[2]  It should be noted that neither party maintains that the Project is subject to M.G.L. c. 149, § 29.  See KDK's Memorandum, pp. 10-12.

9

unambiguous, the terms will be enforced." <u>Seaboard Sur. Co. v. Greenfield</u>, 370 F.3d 215, 219 n.5 (1st Cir. 2004) (construing performance bond) (citations omitted). "The general rule is that a party suing on bond must show strict compliance with its terms." <u>Simplex Time Recorder Co. v. Federal Ins. Co.</u>, 37 Mass. App. Ct. 947, 947 (1994).

Here, KDK failed to comply with the unambiguous terms of Paragraph 4 of the Bond, which provide:

> 4.  [Travelers] *shall have no obligations* to Claimants under this Bond until:
>
>> 4.1  Claimants who are employed by or have a direct contract with [OHP] have *given notice to [Travelers]* (at the address described in Paragraph 12) and *sent a copy, or notice thereof, to the Owner*, stating that a claim is being made under this Bond and, *with substantial accuracy, the amount of the claim.*

(emphasis added).

As set forth in the accompanying Affidavit of Travelers' Laurie Larson, KDK never complied with the provisions of Paragraph 4.  <u>See</u> <u>Affidavit of Laurie Larson</u>, ¶¶ 8, 11-21.  Nonetheless, KDK maintains that it "made a good and sufficient demand on Traveler's [stet] in accordance with the terms of the Payment Bond on or about January 13, 2005."  <u>See</u> <u>Affidavit of Boris Kutikov</u>, ¶ 7.  KDK's demand is attached to its Memorandum as <u>Exhibit G</u>.  A review of KDK's correspondence of January 13, 2005 reveals that it does not comply with the requirements of Paragraph 4.1.  Specifically, it was not provided to Travelers at the address set forth in the Bond, it does not state the amount of KDK's claim with substantial accuracy, and there is no indication on the face of the letter that it was provided to the Project owner.  The same can be said for KDK's

letters to Travelers dated March 16, 2005 (not copied to owner) and May 5, 2005 (failure to state amount of claim; not copied to owner). The record is clear that KDK failed to comply with the express requirements of Paragraph 4.1.

KDK's failures in this regard are significant in that Paragraph 6 of the Bond provides:

> 6. *When the Claimant has satisfied the conditions of Paragraph 4*, [Travelers] shall promptly and at [Travelers'] expense take the following actions:
>
>> 6.1 Send an answer to the Claimant with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.
>>
>> 6.2 Pay or arrange for payment of any undisputed amounts.
>
> (emphasis added).

KDK maintains that Travelers is "bound by the clear and concise terms of the [Bond]." See KDK's Memorandum, pp. 14-16. In this regard, Travelers respectfully requests that KDK be held to the same standard. As KDK failed to satisfy the clear and unequivocal conditions precedent set forth in Paragraph 4 of the Bond, Travelers' obligations under Paragraph 6.1 were never triggered. On that basis, KDK's argument that Travelers failed to comply with the 45 day answer provision of Paragraph 6.1 is moot, and KDK is therefore not entitled to summary judgment. At a minimum, KDK's failure to comply with Paragraph 4.1 of the Bond presents a disputed issue of material fact that precludes summary judgment.

**B.     KDK's Reliance on the National Union Decision is Misplaced.**

KDK's failure to comply with the requirements of the Bond, and thereby trigger Travelers' obligations under Paragraph 6.1, is ample basis for denying summary judgment.  Nonetheless, Travelers further asserts that KDK would not be entitled to the judgment requested in the event KDK's demand satisfied the requirements of Paragraph 4.  KDK argues that it would be entitled to summary judgment in the full amount of its claim on the basis of Travelers' alleged failure to provide an answer to KDK's claim within 45 days.  In short, KDK maintains that Travelers' alleged failure to comply with Paragraph 6.1 of the Bond would result in a forfeiture of Travelers' right to dispute KDK's claim in any manner.  KDK's argument in this regard is misplaced and unsupported by the law in Massachusetts.

Upon information and belief, KDK's attempt to secure judgment against Travelers under Paragraph 6.1 of the Bond is an issue of first impression in this Court. Sureties have been issuing the American Institute of Architects' ("AIA") A312 bond in question here since approximately 1984.  Nonetheless, notwithstanding the recent decisions of the Maryland courts of appeal in National Union Fire Insurance Co. v. Wadsworth Golf Construction Co., 160 Md.App. 257, 863 A.2d 347 (2004) *aff'd*, National Union v. David A. Bramble, Inc., 388 Md. 195, 879 A.2d 101 (2005) (hereinafter referred to collectively as "National Union"), Travelers is not aware of any decision mandating a surety's wholesale forfeiture of its rights in response to a perceived violation by the surety of Paragraph 6.1 of the A312 bond.

### 1. The Massachusetts Superior Court has Expressly Declined to Follow the National Union Decision

In support of its position, KDK relies exclusively on the <u>National Union</u> decision, which is attached to KDK's Memorandum and discussed at length therein. For the reasons stated herein, the holding of the Court of Appeals of Maryland is not applicable in Massachusetts. This point is best emphasized by the Massachusetts Superior Court's recent rejection of <u>National Union</u>. On September 1, 2006, Judge Carol S. Ball of the Suffolk Superior Court denied a summary judgment motion filed by Metheun Construction Co., Inc. ("Metheun") in SUCV 2004-01207-G (the "<u>Metheun Decision</u>"). A copy of the <u>Metheun Decision</u> is attached hereto as <u>Exhibit B</u>.

Upon information and belief, the <u>Metheun Decision</u> is the first occasion the courts of Massachusetts have had to address the issues raised by <u>National Union</u>. The relevant facts, set forth in the Court's decision, are materially identical to those governing KDK's motion for summary judgment. Metheun sought summary judgment against Seaboard Surety Company ("Seaboard") alleging the surety's failure to issue an answer under Paragraph 6.1 of the Bond within 45 days of receiving Metheun's claim.[3] As with KDK, Metheun relied exclusively on the <u>National Union</u> decision (identified in that case as the "<u>Bramble</u>" decision) in support of its claim for summary judgment.

### a. Surety is not Insurance in Massachusetts.

Judge Ball declined to follow <u>National Union</u> on several grounds. First, the Court distinguished the <u>National Union</u> holding on the basis that the foundation of the

---

[3] The primary difference between the claims of Metheun and KDK is presumably Metheun's satisfaction of the notice provisions set forth in Paragraph 4 of the Bond.

decision in <u>National Union</u> was the Court's determination that the bond was to be construed against the surety "according to the rule applicable to insurance contracts" in Maryland.  See <u>National Union</u>, 388 Md. at 207-208, 212.  As noted by Judge Ball in the <u>Metheun Decision</u>, however, in Massachusetts "it is clear that surety bonds are *not* insurance contracts."  See <u>Metheun Decision</u>, p. 3 (emphasis in original).  In support of this conclusion, the Superior Court cited <u>Fed. Deposit Ins. Co. v. Ins. Co. of N. America</u>, 105 F.3d 778, 786 (1st Cir. 1997), *citing* M.G.L. c. 175, § 107 (the Massachusetts legislature has decided that for most regulatory purposes surety bonds are not insurance contracts) and <u>Gen. Elec. Co. v. Lexington Contracting Corp.</u>, 363 Mass. 122, 124 (1973).  <u>Id</u>.  <u>See also</u> <u>Williams v. Ashland Engineering Co., Inc.</u>, 45 F.3d 588, 592 (1st Cir. 1995), *cert. denied*, 516 U.S. 807 (1995) (finding that surety bonds are not insurance contracts and are thus not subject to the Commonwealth insurance laws); <u>Luso-American Credit Union v. Cumis Ins. Soc. Inc.</u>, 616 F.Supp. 846, 848 (D.Mass.1985) (surety bonds are not subject to Massachusetts' insurance laws).  As surety is not treated as insurance in Massachusetts, and therefore the foundation for the decision in <u>National Union</u> is absent, Judge Ball found the holding similarly inapplicable.  <u>Id</u>.

### b.    The Surety Complied with Paragraph 6.1 of the Bond.

In declining to follow <u>National Union</u>, Judge Ball further found that Seaboard complied with Paragraph 6.1 of the bond by responding to Metheun in writing within 45 days of receipt of the claim.  See <u>Metheun Decision</u>, p. 3-4.  Judge Ball found that Seaboard's acknowledgment of the claim and request for additional information was an indication that Seaboard had not accepted and was disputing Metheun's claim pending

completion of the surety's investigation.  Id.  In doing so, the Superior Court found that Seaboard complied with the terms of the bond.  Id.

Here, KDK failed to trigger Travelers' obligations under Paragraph 6.1 of the Bond, therefore no answer was required.  Nonetheless, in a manner identical to Seaboard in the Metheun case, Travelers acknowledged KDK's correspondence of January 13, 2005 within 45 days, requested additional information from KDK, and expressly reserved all rights with respect to Travelers' ongoing investigation.  See Affidavit of Laurie Larson, ¶¶ 16-17 and Exhibit B thereto.  In light of the practical considerations governing Travelers' investigation as identified below, and consistent with the Superior Court's decision in Metheun, Travelers' correspondence of February 7, 2005 would have satisfied its obligations under Paragraph 6.1 had they been triggered by KDK.

### c.     National Union's Interpretation of Paragraph 6.1 is Impracticable.

The Metheun Decision further recognizes that the holding in National Union ignores the realities of suretyship and forces the surety into a "no-win" situation.  See Metheun Decision, p. 4.  Judge Ball found that requiring a surety to complete its investigation and provide a meaningful response with respect to a claim involving a complex, multi-million dollar construction project within 45 days would be "nearly impossible" in most cases.  Id.  The Metheun Court correctly identified the significant conflict between the impact of the holding in National Union, that a surety complete its investigation within 45 days, and the obligation under the Massachusetts Unfair Claims Settlement Practices Act that the surety conduct a thorough and independent

investigation.  Id.; see also M.G.L. c. 176D, § 3(9)(d).  That conflict would force the surety into a an impossible situation whereby it would have two options: (1) pay the claim within 45 days without the benefit of a complete investigation, thereby running the risk of overpayment, as well as jeopardizing its right to recovery through indemnity from the bond principal; or (2) deny the claim within 45 days without the benefit of a thorough and independent investigation, thereby inviting liability under c. 176D.  As the impact of National Union is unfeasible, Judge Ball correctly declined to adopt it.

### 2.    Other Considerations for Rejecting National Union.

In addition to the reasons referenced in the Metheun Decision, there are several additional grounds for rejecting the holding in National Union.

### a.    Massachusetts Courts do not Impose Penalties for Breach of Contract.

In Massachusetts, the fundamental principle of law upon which damages for breach of contract are assessed is that the injured party be placed in the same position as he would have been if the contract had been performed.  Quinn Bros., Inc. v. Wecker, 414 Mass. 815 (1993) (the basic principal of contract damages is that the aggrieved  party should be put in as good a position as if the other party had fully performed).  Accordingly, upon a breach of contract, the defendant is liable for whatever damages follow as a natural consequence and the proximate result of the conduct and which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of a breach.  Weeks v. Calnan, 39 Mass. App. Ct. 933 (1995) (the general rule is that in an action of contract, the damages must be the direct, natural result of the breach, and to have been in the contemplation of the parties

when the contract was made as a probable result of such breach).  Because the central objective behind the system of contract remedies is compensatory, not punitive, punishment of a promisor for having broken his promise has no justification on either economic or other grounds.  See Restatement (2nd) of Contracts, §356 (1981) at Comment (a) (a term providing such a penalty is unenforceable on grounds of public policy).

Here, KDK insists (as guided by National Union) that Travelers' alleged failure to comply with Paragraph 6.1 of the Bond entitles KDK to judgment in the stated, untested, amount of its claim of $612,230.00, thereby forfeiting Travelers' opportunity to assert the significant defenses to payment identified by OHP.  See Affidavit of Jack Grant.  Such a result would operate purely as a penalty against Travelers, as it would be strictly a windfall, and have no direct relation to compensating KDK for any injury resulting from Travelers' alleged breach of Paragraph 6.1 of the Bond.  As forfeiture of Travelers' rights under the Bond has no rational relation to compensating KDK for Travelers' alleged breach of Paragraph 6.1, and instead would exact a penalty upon Travelers, KDK's demand for judgment must be rejected by the Court.

### b.    Travelers did not Waive its Rights Under the Bond.

Again following the lead of National Union, KDK argues that Travelers waived any right to dispute KDK's claim by allegedly failing to comply with the provisions of Paragraph 6.1.  As established, KDK never triggered Travelers' obligations under Paragraph 6.1.  Nevertheless, KDK's assertion that Travelers' waived its defenses is unsupported by both the record and Massachusetts law.

First, Travelers' expressly reserved all rights and defenses with respect to KDK's claim through correspondence dated February 7, 2005. See Exhibit B to Affidavit of Laurie Larson. Moreover, in Massachusetts, "waiver is the voluntary and intentional relinquishment of a known right." Merrimack Mutual Fire Insurance Co. v. Nonaka, 414 Mass. 187, 189 (1993); see also Sheehan v. Commercial Travelers' Mutual Accident Ass'n. of America, 283 Mass. 543, 552 (1933); The Alan Corporation v. International Surplus Lines Ins. Co., 823 F. Supp. 33, 42 (D. Mass. 1993). To constitute a waiver, there must be an actual intention to relinquish an existing right, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish. Alan Corporation, 823 F. Supp. at 42.

Here, it is clear from Travelers' correspondence of February 7, 2005, that Travelers had no intention of relinquishing or waiving any right to dispute KDK's claim. To the contrary, that letter clearly states that it was sent "with the express reservation of all rights and defenses [Travelers] or [OHP] has or may have at law, equity or under the terms and provisions of the bond and contract documents." The clear and explicit reservation of the rights and defenses of both Travelers and OHP defeats KDK's claim that Travelers waived its right to dispute KDK's claim.

### c.   National Union Ignores Important Policy Considerations.

Finally, and consistent with the foregoing, it is important to note that adoption of the National Union decision would violate several fundamental policy considerations underlying the law of suretyship. First, employing the draconian effects of National Union would expose sureties to payment of invalid or fraudulent claims not covered by

the bond.  In the absence of an opportunity to perform a thorough investigation of each claim, sureties would be forced to pay claims that may otherwise be appropriately challenged on the merits.  Such a situation would significantly increase the risk of bonded losses and reduce the utility of surety bonds for obligees and claimants.  This is particularly true in that each payment made by a surety is credited against the penal sum of the bond.  In that regard, any payment made for labor and/or materials not provided to the Project will decrease the funds available under the bond to valid claimants.  In essence, adopting the National Union approach would serve only to bestow a windfall on aggressive yet undeserving claimants, at the expense of the surety, the bonded principal, and subsequent valid claimants.  Such an approach would undoubtedly inspire a flood of undeserving or inflated bond claims in the hope of securing a "gotcha" judgment under Paragraph 6.1.

The National Union approach would further violate the fundamental surety maxim that the liability of the surety is co-extensive with that of the principal.  See John E. Egan Co., Inc. v. Major Constr. Mgmt. Corp., 46 Mass. App. Ct. 643, 646 (1999).  To the extent claimants are entitled to secure what is essentially a default judgment against the surety in the stated amount of each claim under Paragraph 6.1, it would deny the surety the opportunity to assert those substantive defenses available to the bonded principal.  This right of the surety, to stand in the shoes of its principal, is fundamental in that it maintains balance in the tri-partite relationship between the surety, the obligee, and the principal.  The National Union decision threatens to upset this balance, and present the unintended situation where the surety, yet not the principal, is liable to a claimant.

IV.    **CONCLUSION**

KDK is not entitled to summary judgment on the grounds that: (1) Paragraph 6.1 of the Bond is deleted by the controlling provisions of the Miller Act; (2) KDK failed to satisfy the express provisions of Paragraph 4 of the Bond, thereby obviating Travelers' obligations under Paragraph 6.1; and (3) the remedy fashioned by National Union is inconsistent with Massachusetts law and fundamental policy considerations of suretyship.  At a minimum, the issue of KDK's compliance with Paragraph 4 of the Bond represents a disputed issue of material fact precluding summary judgment.  On the basis of the foregoing, Travelers Casualty and Surety Company of America respectfully requests that this Honorable Court deny KDK's Motion for Summary Judgment, and further grant Travelers such other relief as justice may require.

Respectfully Submitted,
**TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA**

By its attorneys,

/s/ Jonathan C. Burwood

_____

Bradford R. Carver, BBO #565396
Jonathan C. Burwood, BBO #643674
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
Telephone:  (617) 213-7000

Dated:  September 13, 2006

34023835v1 856204

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT DEPARTMENT

---

DOWD PLUMBING CORP.,

    Plaintiff,                    CIVIL ACTION NO. 2003-05191 $\mathcal{B}\,\ell\,S\,\prime$

v.

ODF.HOON.PEABODY, a construction joint
venture and TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,

    Defendants.

---

## TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S MOTION TO DISMISS COUNT V AND COUNT VII OF THE PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Mass. R. Civ. P. 12(b)(1) and 12(h)(3), Travelers Casualty and Surety

Company of America ("Travelers") moves to dismiss Count V and Count VII of the Plaintiff's

Amended Complaint filed by Down Plumbing Corp. on the basis that this Court lacks subject

matter jurisdiction. In support of this Motion, Travelers relies on its memorandum of law

submitted herewith.

                TRAVELERS CASUALTY AND SURETY
                COMPANY OF AMERICA

                By its attorneys,

                Paula-Lee Chambers, BBO#566888
                Bradford R. Carver, BBO #565396
                Hinshaw & Culbertson LLP
                One International Place
                Fort Hill Square, 3rd Floor
                Boston, MA 02110
                (617) 213-7000

EXHIBIT
A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                    SUPERIOR COURT
                                                               CIVIL ACTION
                                                               NO. 03-5191 BLS

DOWD PLUMBING CORPORATION

vs.

ODF/HOON/PEABODY, a joint venture, & another.[1]

MEMORANDUM AND ORDER ON MOTION
TO DISMISS COUNT V AND COUNT VII

This matter is before the Court on a motion by the defendant Travelers Casualty and

Surety Company of America ("Travelers") seeking the dismissal of Counts V and VII of the

amended complaint, pursuant to Mass. R. Civ. B. Rule 12(b)(1) and 12(h)(3), Paper #21.

BACKGROUND

The underlying case is that of the plaintiff, Dowd Plumbing Corporation ("Dowd"), an

HVAC subcontractor against the general contractor and its surety on a project known as

Academy Homes II ("Academy II").  The general contractor on Academy II is a joint venture

called ODF/Hoon/Peabody.[2]  The general contract, dated January 19, 2001, is on an American

Institute of Architects Standard Form of Agreement Between Owner and Contractor, Electronic

Format A101-1987, Twelfth Edition.

The Owner is described as "Massachusetts Housing Finance Agency ('MHFA') as

Interim Asset Manager for the U.S. Department of Housing and Urban Development" ("HUD").

---

[1] Travelers Casualty and Surety Company of America.

[2] The parties to the joint venture are ODF Contracting Company, Inc. ("ODF"), Peabody
Construction Co., Inc. ("Peabody") and Hoon Companies, Inc. ("Hoon").

Signing the contract for the Owner was Steven D. Pierce, Executive Director of the MHFA. No person signed for, nor is there a signature line for, HUD or any other entity of the Federal Government.

"The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted" in the general contract by reference.

The MHFA, "acting as agent for HUD, shall review Contractor's Applications for Payment."

Sec. 7.3 of the general contract requires the contractor to provide and pay for payment and performance bonds and "[s]uch bonds shall name the [MHFA] and [HUD] as obligees, and shall be provided by one or more sureties acceptable to the Owner." Sec. 7.3 further provides that "[o]riginals of the bond [sic][3] have been delivered to the Owner and are attached hereto as Exhibit B."

Each of the two bonds are provided by Travelers as surety. Although not entirely clear from the exhibit to Travelers memorandum, it appears to this Court that the two bonds may really be just two parts of a single document. That document is designated AIA Document A312 – Electronic Format, and contains within it in successive numbered pages both the Payment Bond and the Performance Bond. Indeed, at the bottom of each page thereof is the notation "AIA DOCUMENT A312 PERFORMANCE BOND AND PAYMENT BOND - December 1984 Ed."

There is also attached to the bonds a document entitled "DUAL OBLIGEE RIDER." This rider begins with the language stating that it is "[t]o be attached to and form a part of

---

[3] Actually, as the observations that follow suggest, it may not be a typographical error that the word "bond" is in the singular in this sentence.

Performance Bond #103316488 executed and currently with this rider, it is agreed that: Travelers . . . , Surety, and ODF/Hoon/Peabody, A Joint Venture, Principal, . . . agree that the Performance Bond executed in favor of [MHFA], Owner, . . . shall now include as an Obligee with the Owner, [HUD], in its capacity as a source of money to the Owner for exclusive use on the project aforesaid."

The Senior Realty Specialist for the Office of Housing, Boston Field Office for HUD, submitted an affidavit in Circle Trucking, Inc. v. O.D.F. Contracting Co., Inc., et al., Suffolk Superior Court Civil Action No. 03-5217, which addressed the Academy II Project. He described "a unique program known as the HUD/MHFA Demonstration Disposition Program ("Demo/Dispo Program")." The purpose of the Demo/Dispo Program was to renovate and sell to residents properties on which HUD had foreclosed.

HUD contracted with MHFA to perform certain functions as established by the provisions of the Demo/Dispo Agreement. In accordance with that agreement, MHFA was responsible for the supervision and management of the project, and the contracting with outside entities to perform the construction. MHFA was required to conduct all procurement of goods and services in connection with the interim management of the subject properties pursuant to MHFA's procurement policies, and was not required to follow the Federal Acquisition Regulations.

An objective of the Demo/Dispo Agreement was to demolish certain of the then-existing housing and to replace it with new housing, where appropriate, with the tenants to assume control and ownership of the new housing. A corporation controlled by the tenants now owns and manages the property known as "Academy Estates."

## DISCUSSION

Travelers asks that the two counts against it as surety be dismissed because it contends that this project is subject to the Miller Act, 40 U.S.C. secs. 31 *et seq*., and, therefore, any claim to recover for unpaid labor and materials from the payment bond can only be brought in a Federal District Court.

Here, Travelers includes certain documents as exhibits to its memorandum but does not otherwise support its motion with affidavits. Under these circumstances what is presented is "a 'facial attack' based almost solely on the allegations of the complaint, taken as true for purposes of resolving the complaint." Callahan v. First Congregational Church of Haverhill, 441 Mass. 699, 709 (2004). But, this Court "may consider documents and other materials that are not affidavits when ruling on a rule 12(b)(1) motion." Id. at 710.

Further, when a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of proving jurisdictional facts. See, e.g., New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344, 346 (1997)

Also, although this motion was heard just ten business days before this case is scheduled to begin trial, such a motion challenging "subject matter jurisdiction is a nonwaivable issue that can be raised by either party at any point in the proceedings." Shea v. Neponset River Marine & Sportfishing, Inc., 14 Mass. App. Ct. 121, 129 (1982).

The Miller Act requires performance and payment bonds on any contract of more than $100,000 for the construction "of any public building or public work of the Federal Government." 40 U.S.C. sec. 3131(b). Any suit to recover for unpaid labor or materials on a Miller Act project must be brought in "the United States District Court." 40 U.S.C. sec.

4

3133(b)(3).

The Miller Act itself does not define a "public building or public work of the Federal Government." Federal courts have, however, suggested a list of indicia to apply in determining whether a project is subject to the Miller Act. The indicia include: "whether the United States is a contracting party, an obligee of the bond, an initiator or ultimate operator of the project; whether the work is done on property belonging to the United States; or whether the bonds are issued under the Miller Act." Operating Eng'rs Health & Welfare Fund v. JWJ Contracting Co., 135 F.3d 671, 675 (9th Cir. 1998).

An assessment of the situation in issue produces a mixed bag when applying the Operating Eng'rs indicia.

On the issue of whether the United States is a contracting party, the general contract presents a lack of clarity. The Owner is described as "Massachusetts Housing Finance Agency ('MHFA') as Interim Asset Manager for the U.S. Department of Housing and Urban Development." This description does not specifically make the United States a contracting party. This fact is emphasized by the absence of any U.S. Government authorized signatory to the general contract and the absence of any obligations by HUD running to either the Owner or the Contractor.

MHFA is, however, described in Sec. 5.3 of the contract as "acting as agent for HUD" in reviewing the Contractor's applications for payment. Further in Sec. 5.3, it is acknowledged that "HUD is solely responsible for all payments for work performed under this Contract."

The Court next looks to the Dual Obligee Rider, said to be "attached to and form a part of the Performance Bond #103316488 executed concurrently with this rider." The parties seem to

think that this rider only applies to the Performance Bond. If their belief that there are two separate bonds is correct then that might be so. However, as this Court observed above, there seems to be just one bond bearing the #103316488 – or perhaps better said, a bond with two different objectives, performance and payment – to which the Dual Obligee Rider applies.

In any event, the Dual Obligee Rider contains the following language: "Travelers . . . Surety, and ODF/Hoon/Peabody . . . Principal . . . hereby agree that the Performance Bond executed in favor of [MHFA], in connection with a contract for MHFA PROJECT #96-006, . . . which bond and contract are made a part hereof by reference, shall now include as an Obligee with the Owner, [HUD], in its capacity as a source of money to the Owner for exclusive use on the project aforesaid." This language does two things: first, it clarifies HUD's position "as a source of money" to the Owner; and second, it makes more clear the fact that the "Owner" and HUD are not one and the same entity. In short, MHFA is the Owner, not HUD.

HUD is, however, an obligee on the bond, albeit only in its capacity as a source of money for MHFA.

HUD is neither an initiator nor ultimate operator of the project. MHFA was the real initiator, although it was HUD owned real estate, gained in foreclosure proceedings, on which the project was constructed. Neither HUD nor MHFA are the ultimate operators of the project. The ultimate operators are the private parties who purchased the constructed housing.

The work was done on property belonging to the United States, but with the known understanding that when finished it would no longer remain Federal property.

The General Conditions in AIA Form A201, among other things, provides that "any claims arising out of or related to the Contract shall be decided by either arbitration in accordance

6

with the Construction Industry Arbitration Rules of the American Arbitration Association

['AAA'] or by litigation in the Courts of the Commonwealth of Massachusetts." The Federal

Government does not arbitrate claims before the AAA, nor does it litigate claims in the courts of

Massachusetts.

The bond(s) appear to have been issued under G.L. c. 149, not the Miller Act.

The subcontract between Dowd and ODF/Hoon/Peabody is a Massachusetts Chapter 149,

sec. 44F subcontract.

This Court is aware that three other Justices of the Superior Court have had occasion to

write decisions on whether the Academy II Project is, or is not, a Miller Act matter. Two

Justices concluded that Academy II is a Miller Act project, see, <u>Victor Dahar, Chapter 7 Trustee,</u>

<u>Boston Interiors Inc.</u> v. <u>Travelers Cas. & Surety Co. of America,</u> Suffolk Civil Action No. 04-

5071 (Dec. 15, 2005) and <u>Waltham Lime & Cement Company</u> v. <u>Peabody Const. Co., et al.,</u>

Middlesex Civil Action No. 03-1407-G (Jan. 10, 2005). A third Justice, on reconsideration,

concluded that the project was not a public work of the Federal Government subject to the Miller

Act. <u>Circle Trucking, Inc.</u> v. <u>O.D.F. Contracting Co., Inc., et al.,</u> Suffolk Civil Action No. 03-

5217-A (Aug. 11, 2005).

This Court, mindful of the determinations by its colleagues, finds, as did one of the

others, that "the question is a difficult one." However, this Court comes down on the other side

and concludes, on the totality of the facts and the situation, particularly the fact that the Federal

Government was never the "Owner" under the general contract, and is not now the owner of the

property whereupon the construction took place, and given the understood purpose and intentions

for the project, concludes that the Academy II Project was not for the construction "of any public

7

building or public work of the Federal Government," pursuant to 40 U.S.C. sec. 3131(b), and is

not, therefore, a Miller Act Project.

ORDER

For the foregoing reasons, Travelers Casualty and Surety Company of America's Motion

to Dismiss Count V and Count VII of the Plaintiff's Amended Complaint, Paper #21, is

DENIED.

                                                    Allan van Gestel
                                                    Justice of the Superior Court

DATED:        May 3, 2006

8

9-1✓

**COMMONWEALTH OF MASSACHUSETTS**

SUFFOLK, ss.                                           SUPERIOR COURT
                                                      C. A. NO. 04-1207-G

**METHUEN CONSTRUCTION CO., INC.,**

                                                      Plaintiff,

**vs.**

**THE AUSTIN COMPANY, SEABOARD SURETY COMPANY, and NEW ENGLAND
CONFECTIONARY COMPANY,**

                                                      Defendants.

<u>**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**</u>

<u>**INTRODUCTION**</u>

The plaintiff, Methuen Construction Co., Inc. ("Methuen"), brought this action against

defendant Seaboard Surety Company ("Seaboard"), for amounts allegedly due and owing

Methuen from defendant Austin Company ("Austin"), Seaboard's principal, for work performed

by Methuen on a construction project. Methuen claims that Seaboard failed to comply with the

terms of a Payment Bond (the "Bond") issued by Seaboard to ensure payment to subcontractors

who worked on the construction project. Methuen has filed a Motion for Summary Judgment,

arguing that it is entitled to the entire amount of its bond claim because of Seaboard's alleged

breach of the Bond agreement. For the following reasons, Methuen's motion is <u>**DENIED**</u>.

<u>**BACKGROUND**</u>

On November 15, 2001, Seaboard issued Payment Bond No. 367995 on behalf of its

principal, Austin, in connection with Austin's construction of a new facility for the defendant

-1-

Exhibit
B

New England Confectionary Company ("NECCO"). The sum of the bond, as issued, was $52,818,741. Methuen was a subcontractor to Austin on the project; Methuen's work involved furnishing and installing the HVAC and process piping. The contract between Austin and Seaboard is a standard form and contained a "pay-if-paid" clause, which stated that Methuen would only be paid after Austin was paid by NECCO.[1] Methuen performed its work and sought payment from Austin; Austin failed to pay Methuen, apparently because a dispute had arisen between Austin and NECCO, and Austin had not been paid.

On December 5, 2003, Methuen, having not been paid, notified Seaboard of its Bond claim. Methuen also provided its Notice of Claim to both Austin and NECCO as required by the Bond agreement. Seaboard received Methuen's Notice of Claim on December 10, 2003. According to the terms of the Bond agreement, after Methuen provided its Notice of Claim to the proper parties, Seaboard was required to "Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed." On January 15, 2004, Seaboard wrote to Methuen acknowledging Methuen's Notice of Claim and requesting that Methuen complete an Affidavit of Claim. Methuen completed the Affidavit of Claim and returned it to Seaboard on February 3, 2004. On Feburary 6, 2004, Seaboard wrote to Austin transmitting Methuen's Affidavit of Claim and asking Austin to respond within fifteen days. On March 19, 2004, Methuen filed this action against Austin and Seaboard, seeking payment.

---

[1] The "pay-if-paid" clause in the contract states "It is specifically understood and agreed that payment to the Subcontractor . . . shall be made only after receipt of payment by Austin from the Owner, and such payment by Owner to Austin is a condition precedent to Austin's obligation to pay the Subcontractor. For payments not received from the Owner for any reason whatsoever without limitation not due to the fault of Austin, Austin shall not be responsible or liable for payments to the Subcontractor."

## DISCUSSION

### I.    Seaboard's Compliance With The Bond Agreement

Methuen claims that Seaboard is not entitled to dispute any portion of its Bond claim because Seaboard failed to provide an answer within forty-five days of Methuen's Notice of Claim as required by the Bond agreement. Seaboard argues that it did in fact comply with the terms of the Bond agreement, and that even if it did not, Methuen is not entitled to payment of its entire claim as a remedy.

As there is no Massachusetts case law on point, Methuen relies on Nat'l Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc., 879 A.2d 101 (Md. 2005) in support of its claim. In Bramble, the Court of Appeals of Maryland held, in a situation identical to the instant case, that when a surety fails to answer and dispute a subcontractor's bond claim within the forty-five day time period specified in the bond agreement, the subcontractor's claim is considered to be undisputed and the surety is liable under the bond for the amount claimed by the subcontractor, plus interest. Bramble, 879 A.2d at 111.

This court declines to follow Bramble for two reasons. First, the court in Bramble addressed the relevant language of the bond agreement "according to the rule applicable to insurance contracts." Bramble, 879 A.2d at 108. In Massachusetts, however, it is clear that surety bonds are *not* insurance contracts. Fed. Deposit Ins. Co. v. Ins. Co. of N. America, 105 F.3d 778, 786 (1st Cir. 1997), citing G. L. c. 175, § 107, see also Gen. Elec. Co. v. Lexington Contracting Corp., 363 Mass. 122, 124 (1973). Therefore, the very foundation for the Maryland court's decision in Bramble does not exist in Massachusetts.

Second, given the nature of large construction projects, it is logical to treat Seaboard's

-3-

January 15, 2004 letter requesting an Affidavit of Claim from Methuen as an indication that Seaboard had not accepted and was disputing Methuen's claim until Seaboard had completed its own investigation. To rule otherwise would require a surety to have fully completed its independent investigation into the subcontractor's claim and give a final response within forty-five days. This is not a meaningful amount of time when dealing with a large, complex, multi-million dollar construction contract. In most cases it would be nearly impossible to conclude a thorough investigation in such a short-time period. Further, if the surety paid the claim without fully investigating, it would be liable to its principal. If the surety denied the claim without fully investigating, it would subject itself to a 93A/176D action. As Seaboard points out, this puts the surety in a "no-win" situation.

Finally, this is not a case where the surety completely ignored the subcontractor's Notice of Claim. Seaboard acknowledged that it had received Methuen's Notice of Claim and responded, within forty-five days, with a request for an Affidavit of Claim. This suggests that Seaboard was in fact disputing Methuen's claim. Therefore, Seaboard complied with the terms of the bond agreement.

## II.    The "Pay-if-Paid" Clause

Methuen also argues that even if Seaboard did comply with the terms of the bond agreement, it is not entitled to rely on the "pay-if-paid" clause in the subcontract between Austin and Methuen as it is ambiguous and therefore unenforceable.

"Pay-if-paid" clauses are enforceable so long as they are stated as an express condition precedent. A.J. Wolfe, Inc. v. Baltimore Contractors, Inc., 355 Mass. 361, 365, 366 (1969); Canam Steel Corp. v. Bowdoin Const. Corp., 34 Mass. App. Ct. 943, 944 (1993); Bayer &

Mignolla Indus., Inc. v. A.J. Orlando Contracting Co., Inc., 6. Mass. App. Ct. 1, 2-3 (1978).

The pay-if-paid clause at issue here consists of two sentences. The first states that the subcontractor will only be paid "after receipt of payment by Austin from the Owner, and such payment by Owner to Austin is a condition precedent to Austin's obligation to pay the Subcontractor." The second states that "for payments not received from the Owner for any reason whatsoever without limitation not due to the fault of Austin, Austin shall not be responsible or liable for payment to the subcontractor." There is nothing ambiguous about this language. The pay-if-paid clause clearly states that payment by NECCO to Austin is a condition precedent to Austin's duty to pay Methuen. The second sentence merely qualifies and reinforces the first. It is therefore enforceable.

Methuen also argues that the second sentence does not protect Austin from paying its subcontractors in the event that Austin has not been paid by NECCO due to Austin's own fault. Methuen claims that Austin "walked out on" the project with NECCO, and is at fault for not being paid. This issue, however, is very much in dispute and presents a question of fact that is inappropriate for summary judgment.

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment is **DENIED**.

Carol S. Ball
Justice of the Superior Court

Dated: 9/1/06

-5-