UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KDK ENTERPRISES, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>　　　　Defendant. | CIVIL ACTION NO. 05-11509-RCL |

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S
CONTROVERTING STATEMENT OF MATERIAL FACTS IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF KDK ENTERPRISES, INC.**

Pursuant to Local Rule 56.1, Defendant Travelers Casualty and Surety Company of America ("Travelers") hereby submits its Controverting Statement of Material Facts in Opposition to the Motion for Summary Judgment of KDK Enterprises, Inc. ("KDK").

1. Undisputed.

2. Undisputed that Travelers is duly licensed to transact business in the Commonwealth of Massachusetts with a principal place of business in Hartford, Connecticut.

3. Undisputed that this matter arises from a construction project known and referred to as "MHFA Project #96-006 Academy Homes II, Boston, Suffolk County, Massachusetts" (the "Project") involving both the Massachusetts Housing Finance

Agency ("MHFA") and the United States Department of Housing and Urban Development ("HUD").

    4.    Undisputed.

    5.    Undisputed.

    6.    Undisputed.

    7.    Disputed. KDK's approved change order work for the Project totals approximately $609,819.00. See Affidavit of John Grant at ¶ 6.

    8.    Disputed. Throughout the course of the Project, KDK performed deficient and non-conforming work, significantly delayed the Project, and ultimately failed to complete its scope of work. As a result of these deficiencies, OHP incurred losses in the form of, among other things, direct delay expenses, liquidated damages to the Project owner, cleaning costs, and backcharges to subcontractors whose work was impacted by KDK's deficiencies. OHP further incurred losses in connection with KDK's failure to complete its punch list work at the Project. OHP's losses attributable to KDK exceed KDK's subcontract balance. As such, KDK is not entitled to payment under either its subcontract with OHP or the Bond issued by Travelers. See Affidavit of John Grant at ¶¶ 2-5.

    9.    Disputed. KDK failed to comply with the provisions of Paragraph 4.1 of the Bond. See Affidavit of Laurie A. Larson at ¶¶ 8, 11-21.

10. Undisputed that KDK provided a "Claim Form" to Travelers on or about March 16, 2005. See <u>Affidavit of Laurie A. Larson</u> at ¶ 19.

11. Undisputed that KDK sent a letter to Travelers on or about May 5, 2005. See <u>Affidavit of Laurie A. Larson</u> at ¶ 20.

12. Disputed. KDK failed to satisfy the conditions precedent set forth in Paragraph 4.1 of the Bond. See <u>Affidavit of Laurie A. Larson</u> at ¶¶ 8, 11-21.

13. Disputed. KDK failed to satisfy the conditions precedent set forth in Paragraph 4.1 of the Bond. See <u>Affidavit of Laurie A. Larson</u> at ¶¶ 8, 11-21.

14. Disputed. KDK failed to satisfy the conditions precedent set forth in Paragraph 4.1 of the Bond. See <u>Affidavit of Laurie A. Larson</u> at ¶¶ 8, 11-25.

### TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S ADDITIONAL STATEMENT OF MATERIAL FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF KDK ENTERPRISES, INC.

15. KDK's claims arise from a construction project known as Academy Homes II, located in Boston, Massachusetts (the "Project"). See <u>Affidavit of Laurie A. Larson</u> at ¶ 2.

16. The joint venture of ODF/Hoon/Peabody ("OHP") served as the Project's General Contractor. See <u>Affidavit of Laurie A. Larson</u> at ¶ 3.

17. KDK entered into a subcontract with OHP to provide all labor and material necessary to perform the exterior and interior painting at the Project. See <u>Affidavit of Laurie A. Larson</u> at ¶ 4.

18. Travelers, as surety, issued Payment Bond No. 103316488 (the "Bond") on behalf of OHP, as principal, in connection with the Project. See Affidavit of Laurie A. Larson at ¶ 5.

19. Paragraph 1 of the Bond provides:

> 1. [OHP] and [Travelers], jointly and severally bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.
>
> See Affidavit of Laurie A. Larson at ¶ 6.

20. Paragraph 3 of the Bond provides:

> 3. With respect to Claimants, this obligation shall be null and void if [OHP] promptly makes payment, directly or indirectly, for all sums due.
>
> See Affidavit of Laurie A. Larson at ¶ 7.

21. Paragraph 4 of the Bond provides:

> 4. [Travelers] shall have no obligations to Claimants under this Bond until:
>
> > 4.1 Claimants who are employed by or have a direct contract with [OHP] have given notice to [Travelers] (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.
>
> See Affidavit of Laurie A. Larson at ¶ 8.

22. Paragraph 6 of the Bond provides:

> 6. When the Claimant has satisfied the conditions of Paragraph 4, [Travelers] shall promptly and at [Travelers'] expense take the following actions:
>
> 6.1 Send an answer to the Claimant with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.
>
> 6.2 Pay or arrange for payment of any undisputed amounts.

See <u>Affidavit of Laurie A. Larson</u> at ¶ 9.

23. Paragraph 13 of the Bond provides:

> 13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

See <u>Affidavit of Laurie A. Larson</u> at ¶ 10.

24. Throughout the course of the Project, KDK performed deficient and non-conforming work, significantly delayed the Project, and ultimately failed to complete its scope of work. See <u>Affidavit of John Grant</u> at ¶ 2.

25. As a result of these deficiencies, OHP incurred losses in the form of, among other things, direct delay expenses, liquidated damages to the Project owner, cleaning costs, and backcharges to subcontractors whose work was impacted by KDK's deficiencies. See <u>Affidavit of John Grant</u> at ¶ 3.

26. OHP further incurred losses in connection with KDK's failure to complete its punch list work at the Project. See Affidavit of John Grant at ¶ 4.

27. OHP's losses attributable to KDK exceed KDK's subcontract balance. See Affidavit of John Grant at ¶ 5.

28. As such, KDK is not entitled to payment under either its subcontract with OHP or the Bond issued by Travelers. See Affidavit of John Grant at ¶ 5.

29. On or about January 13, 2005, counsel for KDK directed correspondence to Laurie A. Larson of Travelers in Hartford, Connecticut. See Affidavit of Laurie A. Larson at ¶ 11.

30. A review of KDK's letter of January 13, 2005 reveals that KDK enclosed a copy of a prior letter directed to OHP on or about October 28, 2004. See Affidavit of Laurie A. Larson at ¶ 12.

31. Neither letter was directed to Travelers at the Quincy, Massachusetts address set forth in Paragraph 12 of the Bond. See Affidavit of Laurie A. Larson at ¶ 13.

32. Neither letter set forth the amount of KDK's claim with substantial accuracy as expressly required by Paragraph 4.1 of the Bond. See Affidavit of Laurie A. Larson at ¶ 14.

33. Neither letter indicates that KDK provided copies to the Project owner as expressly required by Paragraph 4.1 of the Bond. See Affidavit of Laurie A. Larson at ¶ 15.

34. On or about February 7, 2005, Ms. Larson directed correspondence to counsel for KDK acknowledging receipt of KDK's correspondence, identifying Travelers' ongoing investigation, requesting additional information regarding KDK's claim, and reserving Travelers' rights relevant to the Bond. See Affidavit of Laurie A. Larson at ¶ 16.

35. Specifically, the last paragraph of Ms. Larson's letter provides:

> This correspondence and all prior or subsequent communications and/or investigative efforts are made with the express reservation of all rights and defenses [Travelers] or [OHP] has or may have at law, equity or under the terms and provisions of the bond and contract documents. This reservation includes, without limitation, defenses that may be available under any applicable notice and suit limitation provisions. Subject to this strict and continuing reservation, we look forward to hearing from you.

See Affidavit of Laurie A. Larson at ¶ 17.

36. On or about March 16, 2005, counsel for KDK again wrote to Travelers in Hartford, providing additional information with respect to KDK's claim. See Affidavit of Laurie A. Larson at ¶ 18.

37. Again, KDK's correspondence of March 16, 2005 failed to indicate that a copy was provided to the Project owner consistent with the express requirements of Paragraph 4.1 of the Bond. See Affidavit of Laurie A. Larson at ¶ 19.

38. On May 5, 2005, counsel for KDK directed correspondence to Travelers with respect to its claim. See Affidavit of Laurie A. Larson at ¶ 20.

39. KDK's correspondence of May 5, 2005 failed to state the amount of KDK's claim with substantial accuracy, and further failed to indicate that a copy was provided to the Project owner in compliance with Paragraph 4.1 of the Bond. See Affidavit of Laurie A. Larson at ¶ 20.

40. Travelers never received any correspondence from KDK that complied with the requirements of Paragraph 4.1 of the Bond. See Affidavit of Laurie A. Larson at ¶ 21.

41. Although KDK failed to trigger Travelers' obligations under Paragraph 6 of the Bond, Travelers nonetheless undertook a good faith investigation of KDK's claim. See Affidavit of Laurie A. Larson at ¶ 22.

42. Travelers' investigation ultimately revealed that KDK's delayed and deficient work at the Project caused OHP significant losses for which OHP was entitled to backcharge KDK's subcontract. See Affidavit of Laurie A. Larson at ¶ 23.

43. Moreover, Travelers' investigation revealed that a significant portion of KDK's claim constituted alleged extra work that was ultimately determined to be part of KDK's original scope of work. See Affidavit of Laurie A. Larson at ¶ 24.

44. On this basis, KDK is not entitled to any further payment from OHP in connection with its work at the Project. See Affidavit of Laurie A. Larson at ¶ 25.

45. Accordingly, KDK is not entitled to collect any amounts from Travelers under the Bond. See Affidavit of Laurie A. Larson at ¶ 25.

        Respectfully Submitted,
**TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA**

By its attorneys,


/s/ Jonathan C. Burwood
_____

Bradford R. Carver, BBO #565396
Jonathan C. Burwood, BBO #643674
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
Telephone: (617) 213-7000

Dated: September 13, 2006

34023946v1 856204